IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRIVELLA HOLDINGS LIMITED,

*Appellant*,

v.

MESEARCH MEDIA TECHNOLOGIES,
LIMITED,

*Appellee*.

Civil Action No. 2:25-cv-333

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

On March 5, 2025, Appellant Crivella Holdings Limited ("Crivella") filed a notice of appeal from a final order of the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") denying Crivella's Motion for Relief from Stay. (ECF No. 1). Appellees Game Creek Holdings, LLC; RMS Funding Company, LLC; and Trib Total Media, LLC (collectively, "Appellees") request that the Court affirm the Bankruptcy Court's decision. (ECF No. 10). For the following reasons, the Court will affirm the Bankruptcy's Court decision.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Crivella owns software related to U.S. Patent No. 6883008 B2 and 779007 B2 which include "software code, software code documentation, software design, software design documentation, testing procedures, data structure drawings, object code, executable software

---

[1] The limited facts which are material to the resolution to this matter are not the subject of genuine dispute.

images, software use know-how and software training manuals." (ECF No. 9, pp. 7-8). Crivella

also owns certain intellectual property and software, including data, metadata, manuals, and know-

how necessary for using the patent related software.

On July 1, 2019, a Software License Agreement ("License Agreement") was executed

between Crivella Holdings Limited and MeSearch Media Technologies Limited (the "Debtor").[2]

The License Agreement allows the Debtor to use two software patents owned by Crivella and

provides that Crivella grants the licensee a perpetual, non-transferable, limited-exclusive license

for use in the Market Segment, to commercially exploit the patent related software, the patent

related intellectual property, and any future patent related intellectual property, throughout the

world, with the right to provide limited sublicenses to third parties for use in the Market Segment.

Section 9.4 of the License Agreement states:

> **Assignment of Agreement**. This Agreement and the rights granted hereunder shall
> inure to the benefit of the parties hereto and shall not be assignable by either party,
> *except to a successor in interest or wholly-owned subsidiary of that party*, without
> the written consent of the other, which consent shall not be unreasonably withheld.

(ECF No. 9-1, p. 22) (emphasis added).

On August 13, 2024, creditors of the Debtor filed a petition for involuntary bankruptcy

against the Debtor. Appellees, who were the petitioning creditors, also sought the appointment of

a Chapter 11 trustee. On September 23, 2024, the Debtor and the petitioning creditors entered a

stipulation whereby the Debtor agreed to consent to the bankruptcy petition and the appointment

of a Chapter 11 trustee. On October 2, 2024, Crystal H. Thornton-Illar was appointed as the

---

[2] At the February 20, 2025, hearing, Appellees' counsel confirmed the Debtor was formerly
referred to as Crivella Media Technologies Limited and that the name change was made around
July 2019. (ECF No. 6, pp. 4-5).

Chapter 11 trustee (the "Chapter 11 Trustee") of the Debtor.[3]  Crivella filed a motion seeking relief from the automatic bankruptcy stay under 11 U.S.C. § 362(d).  It is seeking to terminate the License Agreement as it contends that its interests are not adequately protected due to the Debtor's alleged violation of the License Agreement.  The Bankruptcy Court denied Crivella's motion holding that the language in § 9.4 of the License Agreement allows for assignment of the agreement to a party other than the debtor or debtor in possession – thus, no cause justified relief from the stay.

Crivella appealed the Bankruptcy Court's decision arguing that it erred in (1) finding that the License Agreement authorizes assumption and assignment to a hypothetical third party and (2) determining that the License Agreement may be assigned regardless of whether it may be assumed. (ECF No. 9).  Crivella contends that 11 U.S.C. § 365(c) precludes assignment of the License Agreement and that its motion for a relief from the automatic stay should have been granted. Appellees filed a motion seeking to intervene in this appeal (ECF No. 2), which the Court granted on May 15, 2025 (ECF No. 8).  They request that the Court affirm the Bankruptcy Court's Memorandum Opinion and February 28, 2025, Order denying Crivella's motion for relief from the automatic stay.

## II.    JURISDICTIONAL STATEMENT AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), the Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" in bankruptcy proceedings.  28 U.S.C. § 158(a).  District courts review "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error[,] and its exercise of discretion for abuse thereof."  *In re United Healthcare Sys., Inc.*, 396 F.3d 247,

---

[3] The Chapter 11 Trustee is no longer a party-in-interest in this case because the Debtor retains the exclusive right to continue all actions under the plan of reorganization.  (ECF No. 12).

249 (3d Cir. 2005) (internal quotation marks omitted). A factual finding by a bankruptcy court is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### III.    ANALYSIS

11 U.S.C. § 362 provides that a petition for bankruptcy operates as a stay, applicable to all entities, of

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against debtor that was or could have commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. §362(a)(1). The stay mandated by this provision is automatic. The debtor does not have to make any formal request that it be issued or applied to a particular proceeding. The burden to obtain a relief from the stay is on the party seeking to proceed to petition the Bankruptcy Court for relief from the stay. *See* 11 U.S.C. § 362(d). The scope of the automatic stay is broad and covers all proceedings against a debtor. *Ass'n. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (internal citations omitted). "Because the automatic stay serves the interests of both debtors and creditors, it may not be waived[,] and its scope may not be limited by a debtor." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1992).

Relief from the automatic stay may be sought, in part, pursuant to 11 U.S.C. § 362(d) which states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic stay], such as by terminating, annulling, modifying, or conditioning such stay. . . for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

4

11 U.S.C. § 362(d). Cause is not defined by § 362(d)(1). It is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay. *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing cases); *see also Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir.1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." (citation omitted)). Crivella argues that cause exists for the Court to grant relief from the automatic stay because its interests in the License Agreement are not adequately protected due to the allegations of the Debtor's violation of the License Agreement. (ECF No. 9, pp. 6-7). Crivella argues that, under the United States Court of Appeals for the Third Circuit's decision in *Matter of West Electronics Inc.*, 852 F.2d 79 (3d Cir. 1988), cause exists for the Court to lift the stay because the License Agreement is not assignable absent Crivella's consent under applicable non-bankruptcy law.

11 U.S.C. § 365(a) provides that the Debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365. While the term "executory contract" is not defined in the Bankruptcy Code, the Third Circuit has adopted the following definition: "[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (internal citations omitted). The parties do not dispute that the License Agreement is an executory contract. *See In re Valley Media, Inc.*, 279 B.R. 105, 135 (Bankr. D. Del. 2002) (holding that a copyright license agreement was an executory contract); *In re Golden Books Entm't, Inc.*, 269 B.R. 311, 314 (Bankr. D. Del.

2001) (same); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 42–45 (Bankr. D. Del. 1999) (holding

that a patent license agreement was an executory contract).  The Debtor's right to assign the

contract is subject to the limitation set forth in 11 U.S.C. § 365(c)(1) which provides that

> The trustee may not assume or assign any executory contract or unexpired lease of
> the debtor, whether or not such contract or lease prohibits or restricts assignment of
> rights or delegation of duties, if . . . applicable law excuses a party, other than the
> debtor, to such contract or lease from accepting performance from or rendering
> performance to an entity other than the debtor or the debtor in possession, whether
> or not such contract or lease prohibits or restricts assignment of rights or delegation
> of duties; and . . . such party does not consent to such assumption or assignment. .
> . .

11 U.S.C. § 365(c)(1).

Section 365(c)(1)'s limitation on the assignment of executory contracts applies whenever

the contract is "subject to a legal prohibition against assignment" to a third party and the non-

debtor party to the contract does not consent to assignment.  *West Electronics.*, 852 F.2d at 83.

The Third Circuit has stated that when an executory contract is subject to the limitation on

assignment set forth in § 365(c)(1), the non-debtor party to the contract is entitled to relief from

the automatic stay pursuant to § 362(d)(1) to seek termination of the contract.  *Id.* at 83–84.

Section 365(c)(1) limits a debtor in possession's ability to assign that executory contract to a third

party and makes no reference to whether a debtor or debtor in possession actually *intends* to assign

the executory contract to a third party.  *See In re Catapult Entm't Inc.*, 165 F.3d 747, 750 (9th Cir.

1999).  Thus, the plain language of Section 365(c)(1) establishes what courts have come to refer

to as the "Hypothetical Test."  *See, e.g., id.* at 750; *West Electronics*, 852 F.2d at 83.  The Third

Circuit adopted the Hypothetical Test in *West Electronics. See id.* at 83 (stating that "the relevant

inquiry is not whether [applicable non-bankruptcy law] would preclude an assignment from . . . a

debtor to . . . a debtor in possession, but whether it would foreclose an assignment by [a debtor] to

[a third party]").

6

Under the Hypothetical Test, the Court must evaluate whether, in light of the applicable federal law on patents, Crivella would have to accept performance of the License Agreement from an entity "other than the Debtor." *Id.* at 82-83. The "long standing federal rule of law with respect to the assignability of patent license agreements provides that these agreements are personal to the licensee and not assignable *unless expressly made so in the agreement.*" *Unarco Industries, Inc. v. Kelley Co., Inc.*, 465 F.2d 1303, 1306 (7th Cir. 1972) (internal citations omitted) (emphasis added). This federal rule in favor of allowing a patent holder to choose who, if anyone, may use the patented invention promotes the important federal policy underlying patent law: to foster and reward invention

> [which] is primarily accomplished by granting a 17 year monopoly for the patent holder to exploit. Limiting assignability to licenses in which the patent holder expressly agrees to assignment aids the patent holder in exploiting the patent and thus "rewards" the patent holder. Free assignability of a nonexclusive patent license without the consent of the patent holder is inconsistent with patent monopoly and thus inconsistent with federal policy.

*In re CFLC, Inc.*, 174 B.R. 119, 123 (N.D. Cal. 1994), *aff'd sub nom., see also Everex Systems, Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673 (9th Cir. 1996). Here, the License Agreement contains express language allowing assignment to a "successor in interest" without further consent of either party. The issue is whether a successor in interest is an entity other than the debtor within the meaning of 11 U.S.C. § 365(c).

The Bankruptcy Court held that a successor in interest is "an entity other than the debtor" for purposes of 11 U.S.C. § 365(c). (ECF No. 1, p. 44). Crivella argues that this holding is incorrect and contends that "a successor in interest is a party that has the same legal rights to ownership or control of the property of the Debtor." (ECF No. 9, p. 16). Thus, according to Crivella, a successor in interest is "not simply any third party" and does not fit within the Third Circuit's Hypothetical Test. (*Id.*). The Appellees argue that "[t]he Bankruptcy Court correctly

determined that 'successor in interest' is a broad term of art that could include various entities that

are not owned or controlled by, and thus that could be entities 'other than,' the debtor or debtor in

possession." (ECF No. 10, p. 9).

 The License Agreement does not define the term "successor in interest." Thus, the Court

must apply the plain meaning of the words. *See Aleynikov v. Goldman Sachs Group, Inc.*, 765

F.3d 350, 360 (3d Cir. 2014) (stating that "dictionaries are the customary reference source that a

reasonable person in the position of a party to a contract would use to ascertain the ordinary

meaning of words not defined in the contract." (internal citations omitted)). Successor in interest

is defined as "a successor to another's interest in property; especially a successor in ownership of

a business that is carried on and controlled substantially as it was before the transfer." MERRIAM-

WEBSTER, *Successor in Interest*, https://www.merriam-

webster.com/legal/successor%20in%20interest (last visited Aug. 4, 2025). Section 365(c)

requires the contract to be assignable to an "entity other than the debtor." 11 U.S.C. § 365(c).

This language is broad. The statute does not require the contract to be freely assignable or

assignable to any party. The Court holds that a successor in interest can be considered an entity

other than the Debtor "since a Successor in Interest is any entity that succeeds to the interest of the

Debtor, whether that be through purchase, transfer, or any other vehicle, the Debtor may use,

whether in or outside of bankruptcy, to assign its interests to a third party." (*See* ECF No. 1, pp.

44-45).[4]

---

[4] Crivella argues that "while the Bankruptcy Court gives the example of a bankruptcy trustee as a 'successor in interest,' the Third Circuit has held that it is not correct that a bankruptcy trustee is simply the 'successor in Interest' to the prepetition debtor." (ECF No. 9, p. 15). Crivella misunderstands the issue. The question is not whether the bankruptcy trustee is the Debtor's successor in interest but whether a successor in interest is an "entity other than the Debtor." *See* 11 U.S.C. § 365(c)(1)(A).

Crivella cites *In re; Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) for the proposition that "[w]here there is no language allowing the assumption of the License by the debtor-in-possession, the debtor-in-possession is precluded from assuming and thus assigning the License – even to its successor-in-interest." (ECF No. 9, p. 17).[5] In other words, Crivella argues that, despite the express contractual language, the contract is not assignable because it is not assumable. *Sunterra* is similar to the instant case in that the contract at issue authorized assignment to an entity other than the debtor. The Court acknowledges that contract assignment and assumption are different events in a bankruptcy case. Nevertheless, the Court agrees with the well-reasoned opinion of the Bankruptcy Court that *Sunterra* is inconsistent with § 365(c):

> Section 365(c) states that a contract cannot be assumed or assigned if the contracting party would not have to accept performance under the agreement from a party other than the debtor per § 365(c)(1)(A), and the party does not consent to assumption or assignment per § 365(c)(1)(B). This Court reads those sections together to mean that if an agreement contains language that it may be assigned per § 365(c)(1)(A), the inquiry ends there. However, even if the agreement prohibits assignment and under applicable law § 365(c)(1)(A) precludes assignment, the parties may still choose to consent to the assignment and may do so under § 365(c)(1)(B). The court in *Sunterra* failed to consider that consent to assumption or assignment in § 365(c)(1)(B) would overcome a lack of assignability under § 365(c)(1)(A).
>
> This Court further finds that the *Sunterra* court erroneously held that an agreement must expressly provide for assumption in addition to assignment to satisfy the requirements of the Hypothetical Test and § 365(c). The body of relevant case law on this issue only deals with instances where provisions exist consenting to the assignment of the agreement, since contracting parties, unless their lawyers have

---

Further, Crivella contends that the parties to the License Agreement did not intend to authorize assignment in the event of bankruptcy as evidenced by § 8.2 of the License Agreement. Section 8.2 permitted Crivella to terminate the agreement in the event of bankruptcy. Crivella acknowledged that such an ipso facto clause is ineffective in bankruptcy proceedings, (ECF No. 6, p. 11), but still argues that this clause is relevant to the parties' intent regarding assignment. (ECF No. 9, p. 17). The Court does not view § 8.2 as relevant to the parties' intent when § 9.4 explicitly permits assignment to "a successor in interest or wholly-owned subsidiary of that party." (ECF No. 9-1, p. 22).

[5] Crivella concedes that the Third Circuit has not adopted this position. (ECF No. 9, p. 17).

advanced knowledge of bankruptcy law, would not have the foresight to include language regarding the assumption of a contract in bankruptcy. This Court does not find that § 365(c) requires language consenting to assumption, but rather, to quote the Petitioning Creditors' point made frequently at oral argument, if the License can be assigned, it can be assumed. *See West Electronics*, 852 F.2d at 83 ([holding that] if the government would have to consent to assignment of the contract, then the debtor in possession could not assume the contract); [*In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015)] ([holding that the] "limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contact does not consent to assignment."); [*In re Physiotherapy Holdings, Inc.*, 538 B.R. 225, 233 (D. Del. 2015)] ([holding that the] debtor's contractual right to assign the agreement allowed the debtor to assume the agreement according to the hypothetical test); [*In re Hernandez*, 285 B.R. 435, 440 (Bankr. D. Ariz. 2002)] ([holding that] the hypothetical test looks to whether the contract can be assigned, to determine if it can be assumed); [*In re Catapult Ent., Inc.*, 165 F.3d 747, 754-55 (9th Cir. 1999)] ([holding that] if the contract cannot be assigned due to nonbankruptcy law, it cannot be assumed); [*In re Quantegy, Inc.*, 326 B.R. 467, 471 (Bankr. M.D. Ala. 2005)] ([stating that] since the license specifically consented to being assigned to a third party, the license could be assumed by the debtor under § 365(c)(1)).

(ECF No. 1, pp. 46-47). Further, the Court would add that its position is consistent with the concepts underlying freedom of contract. "[P]atent law allows a licensor to expressly authorize the use of its name and intellectual property. Having done so, the licensor cannot be heard to complain that the same applicable law excuses him from the consequences of his own contract." *Quantegy*, 326 B.R. at 471.

In sum, the Court will affirm the Bankruptcy Court's denial of Crivella's motion for relief from the automatic stay. The License Agreement allows assignment of the agreement to a "successor in interest." This language is broad enough to encompass an entity other than the Debtor or debtor in possession. In accordance with the express contractual language, Crivella has to accept performance from any party other than the Debtor that is a successor in interest to the Debtor. Under § 365(c) and the Hypothetical Test adopted by the Third Circuit in *West*

*Electronics*, the License Agreement is assignable.  Consequently, there is no cause for the Court to grant relief from the stay imposed by 11 U.S.C. § 362(d).

## IV.    CONCLUSION

For the foregoing reasons, the Court will affirm the Bankruptcy Court's February 28, 2025, Order denying Crivella's motion for relief from the automatic stay.  An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

8/25/25
Dated